Gregory THORNTON, Appellant

v.

The STATE of Texas.

No. PD–0669–13.

Court of Criminal Appeals of Texas.

April 2, 2014.

 
 
 
 

 
 
 
 
 
 
 
 
 
 
 
 
 

 
 
 
 

 
 
 

Joel Cook, Law Offices of Wm. Everett Seymore, Lubbock, TX, for Appellant.

Lisa McMinn, State Prosecuting Attorney, Austin, TX, for the State.

## OPINION

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, KEASLER, and HERVEY, JJ., joined.

After a jury trial, the appellant was convicted of the third-degree felony of-

fense of tampering with evidence, on a theory of concealment,[1] for reaching into his pocket, pulling out a crack pipe, and dropping it to the ground in the presence of two police officers.[2] On appeal, the Seventh Court of Appeals deemed the evidence to be insufficient to support a conviction for tampering with evidence by concealment because, with respect to the element of concealment, the evidence showed that "at least one of the officers on the scene ... was aware of the presence of the item alleged to have been concealed" at all times.[3] Accordingly, it reversed the judgment of the trial court and ordered that the defendant be acquitted.[4]

After this Court, on initial discretionary review, remanded the cause for the court of appeals to consider reforming the judgment to reflect a conviction for *attempted* tampering with evidence,[5] the court of appeals, in a published opinion, explicitly declined to do so.[6] We granted the State's petition for discretionary review to address three issues relating to the court of appeals's opinion on remand: 1) Whether the court of appeals erred to hold that the State failed to "preserve" the issue of reformation; 2) Whether the court of appeals erred to rule that reformation may be used only to reform the "aggravating elements" of an offense; and 3) Whether the court of appeals erred to conclude that there is insufficient evidence to support a convic-

tion for attempted tampering with evidence. We will reverse.

## I. FACTS AND PROCEDURAL POSTURE

On April 11, 2008, Lubbock Police Officers Meil and Roberts, dressed in plain clothes and driving an unmarked car, were assigned to burglary patrol in a residential neighborhood. At approximately 7:30 a.m., as "[t]he sun was coming up," Meil and Roberts spotted the appellant and a female companion walking in the middle of a street that was lined on either side by an unobstructed sidewalk. Seeing this, Roberts drove toward the curb in order to cite the appellant and his companion for violating the "Use of Sidewalk" provision of the Texas Transportation Code.[7] As the officers' vehicle was pulling over, the appellant and his companion stepped from the street onto the sidewalk and ultimately continued to walk with their backs to the officers' car.

By the time Meil and Roberts exited their vehicle, the appellant and his companion were approximately ten to fifteen feet away. After stepping onto the sidewalk, the officers ordered the appellant and his companion to stop. As the appellant turned around, Meil and Roberts—now twenty feet from the appellant—identified themselves as police officers and showed the appellant their badges and

1. TEX. PENAL CODE § 37.09(c), (d)(1) ("A person commits an offense if the person[,] ... knowing that an offense has been committed, ... conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense.").

2. *Thornton v. State*, 377 S.W.3d 814, 816 (Tex. App.-Amarillo 2012).

3. *Id.* at 818.

4. *Id.*

5. *Thornton v. State*, No. PD–1517–12, 2013 WL 105874 (Tex.Crim.App. Jan. 9, 2013) (not designated for publication).

6. *Thornton v. State*, 401 S.W.3d 395, 401 (Tex. App.-Amarillo 2013).

7. *See* TEX. TRANSP. CODE § 552.006(a) ("A pedestrian may not walk along and on a roadway if an adjacent sidewalk is provided and is accessible to the pedestrian.").

sidearms. Apparently realizing that the two men in front of him were police officers, the appellant reached into his pocket and dropped a small object that broke when it hit the sidewalk, producing the distinctive sound of shattering glass. After dropping the object, the appellant approached the officers. The broken pieces of the object remained in the middle of the sidewalk where the appellant had dropped it.

Because of his position on the sidewalk, Meil did not actually see the appellant drop the object. Roberts, on the other hand, never lost sight of the object from the moment the appellant removed it from his pocket. Roberts, having his own suspicions as to the nature of the object, directed Meil to inspect it. Based on its shape, contents, and the presence of burn marks, Meil was able to confirm that the object was, in fact, a crack pipe. The officers then arrested the appellant for possession of drug paraphernalia,[8] and he was ultimately charged by indictment with tampering with evidence by concealment.

## A. At Trial

The appellant exercised his right to a jury trial on guilt-innocence, but elected to have the trial court assess punishment. The State's only witnesses at the guilt phase were Meil and Roberts. During the course of direct examination, Roberts confirmed that the appellant had "stealthfully reached in [his pocket], pulled [the pipe] out palming it, and then dropped it" as he walked toward the officers. While cross-examining Roberts, defense counsel directed him to re-enact the appellant's precise movements when he reached into his pocket and dropped the pipe. When both parties rested and closed, the appellant, seizing on the fact that Roberts testified that he had never lost sight of the crack pipe, asked the trial court to instruct the jury as to the lesser-included offense of attempted tampering with evidence.[9] The State made no argument opposing the appellant's proposed charge, but the trial court nevertheless rejected it. After deliberation, the jury returned a verdict of guilty on the charge of tampering with evidence by concealment, and the appellant was sentenced by the trial court to a forty-five year term of confinement.[10]

## B. On Appeal

On his initial appeal to the court of appeals, the appellant argued that the evidence upon which the jury relied to convict him was legally insufficient to establish the element of concealment. The State responded, first, that the crack pipe *was* concealed from Roberts, however momentarily, when the appellant "palmed" the pipe as he was removing it from his pocket; and second, that even if Roberts had a clear view of the crack pipe at all times, Meil did not—and that on the basis of the appellant's successful concealment of the evidence from the view of Meil, the appellant's conviction was sufficiently supported by the evidence and should be affirmed. The court of appeals disagreed with the State on both grounds. As to the first

8. *See* Tex Health & Safety Code § 481.125(a) ("A person commits an offense if the person knowingly or intentionally uses or possesses with intent to use drug paraphernalia to ... inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter.").

9. *See* Tex.Code Crim. Proc. art. 37.09(4) ("An offense is a lesser included offense if ... it consists of an attempt to commit the offense charged or an otherwise included offense.").

10. Because he had been previously convicted of separate sequential felonies, the appellant was subject to enhanced punishment. *See* Tex. Penal Code § 12.42(d).

ground, the court of appeals simply disputed the State's claim that the pipe was out of Roberts's view, even for a moment;[11] as to the second, the court reasoned that, since "at least one of the officers on the scene . . . was aware of the presence of the item alleged to have been concealed," case law suggests that "[one] officer's awareness of evidence is imputed to other officers."[12] Accordingly, it reversed the judgment of conviction and rendered a judgment of acquittal as to the tampering charge.[13]

During the pendency of that appeal, however, and before the court of appeals issued its opinion, we issued our own opinion in *Bowen v. State.*[14] In *Bowen*, we held that a court of appeals, upon finding the evidence supporting a conviction to be legally insufficient, is not necessarily limited to ordering an acquittal, but may instead reform the judgment to reflect a verdict of guilty on a lesser-included offense—even when no lesser-included instruction was given at trial. In light of this holding, in its initial petition for discretionary review, the State asked this Court to vacate the court of appeals's judgment in this case and remand the cause for "that court to consider the effect of *Bowen,* if any, on its reasoning and analysis[.]"[15] We granted the State's request.[16]

On remand, the court of appeals gave three reasons why it considered reforma-

tion of the judgment to reflect a conviction for the lesser offense to be inappropriate for this case. First, the court of appeals held that "the State waived any error with respect to the trial court's failure to submit a lesser-included offense" when it "stood idly by as the trial court denied Appellant's request for one."[17] Second, and "[n]otwithstanding the issue of waiver," the court of appeals read our opinion in *Bowen* to stand for the proposition that "an appellate court should reform the conviction to the lesser-included offense in [only] those situations where the State has failed to prove an 'aggravating element' of the charged offense, but has met its burden of proof as to the 'essential elements' of the lesser included offense."[18] On the basis of this characterization, the court of appeals deemed *Bowen* "not relevant to [its] decision to acquit rather than reform the judgment," since "[c]oncealment is not an 'aggravating element' of the offense of tampering with evidence, it is the very *sine qu[a] non* of that offense."[19] Third, according to the court of appeals, "even if *Bowen* were applicable to this case, the evidence presented would not be legally sufficient to support a conviction of attempted tampering with evidence."[20] The court of appeals reasoned that a contrary conclusion would require "total speculation as to whether or not Appellant had the specific intent to 'conceal' the evidence once he removed it from his pocket, or whether he merely intended to dispossess

11. *Thornton,* 377 S.W.3d at 818.

12. *Id.* In its present petition for discretionary review, the State has not requested that we reexamine either of these rulings by the court of appeals.

13. *Id.*

14. 374 S.W.3d 427 (Tex.Crim.App.2012).

15. *Thornton,* 2013 WL 105874, at *1.

16. *Id.*

17. *Thornton,* 401 S.W.3d at 400.

18. *Id.* (citing *Bowen,* 374 S.W.3d at 432).

19. *Id.* at 401.

20. *Id.*

himself of it." [21]

In its present petition for discretionary review, the State has asked us to review each of the court of appeals's justifications for refusing to reform the judgment to reflect a conviction for attempted tampering. We will address these justifications in turn.

## II. ANALYSIS

### A. Preservation of Error?

■ After determining that the evidence of concealment was legally insufficient, the court of appeals began its consideration of whether to reform the appellant's judgment by positing that "the State waived any error with respect to the trial court's failure to submit a lesser-included offense by failing to either timely request such a submission or object to the omission of the issue in the jury charge." [22] We note, as a preliminary matter, that the State has never objected to, nor complained of, the *trial court's* failure to submit a lesser-included offense instruction. Rather, the State has complained (and continues to complain) of the *court of appeals's* fail-

ure to reform the judgment to reflect a conviction for the lesser offense. Nevertheless, in their briefs, both parties seem to understand the court of appeals's reasoning to be that, by "failing to either timely request such a submission or object to the omission of the issue in the jury charge" during trial, the State essentially "waived" the right to later request a reformation of the judgment on appeal. [23]

Our jurisprudence regarding the availability of judgment reformation after a finding of insufficient evidence began nearly fifteen years ago, in *Collier v. State.* [24] In *Collier*, a four-judge plurality reasoned that an appellate court should not rescue "[t]he [S]tate ... from a trial strategy" of "not requesting instructions on lesser included offenses [and expecting that] the jury will convict an accused of the greater offense rather than let the accused ... go scot-free." [25] Unwilling to soften the backfiring effects of the State's "overreaching," [26] the plurality concluded that "a court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense only if ... either the jury

21. *Id.* at 402.

22. *Id.* at 400.

23. We note, however, that in the context of error preservation, a "waiver" is an "intentional relinquishment or abandonment of a known right or privilege." *See Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App.1993). It therefore makes little sense to say that *at trial* the State intentionally relinquished a right (*i.e.*, the right to request reformation) that arose only after an action taken by the court of appeals (*i.e.*, a finding of insufficient evidence)-how could the State have "known"? Perhaps it could be argued that the State unknowingly failed to preserve error—in other words, that the State *forfeited* the right to request reformation. But again, "[f]orfeit[ure] ... refer[s] to the loss of a claim or right for failure to insist upon it by objection,

request, motion, or some other behavior calculated to exercise the right in a manner comprehensible to ... the trial judge." *Id.* How could the State have alerted the trial judge to a possible error (*i.e.*, the failure to reform the judgment to reflect a conviction for the lesser offense) that he was in no position to rectify or obviate?

24. 999 S.W.2d 779 (Tex.Crim.App.1999).

25. *Id.* at 782 (Tex.Crim.App.1999) (plurality opinion) (quoting *State v. Myers*, 158 Wis.2d 356, 461 N.W.2d 777, 780–83 (1990)).

26. *See id.* at 792 (McCormick, P.J., dissenting to denial of State's motion for reh'g) (*"Myers* and the lead plurality opinion ... penaliz[e] the prosecution for what they perceive to be prosecutorial overreaching.") (internal quotation marks omitted).

was instructed on the lesser included offense ... or one of the parties asked for but was denied such an instruction."[27] As neither of those conditions was met in that case, the plurality voted to affirm the court of appeals's refusal to reform the judgment of conviction.[28] In a concurring opinion, Judge Keasler noted that he would have allowed courts of appeals to reform judgments to reflect a conviction for a lesser-included offense only under circumstances in which the "lesser-included offense was submitted in the jury charge."[29]

In *Haynes v. State*, a six-member majority of the Court discerned that "[t]he narrowest ground upon which" the *Collier* plurality and Judge Keasler had "agreed is that an appellate court may ... reform a judgment to reflect a conviction for the lesser-included offense when that ... offense was submitted in the jury charge."[30] In the course of reaching this conclusion, however, the Court noted that, in the context of double jeopardy, the State is barred from initiating a subsequent prosecution for a lesser-included offense after an appellate reversal for insufficient evidence because "[n]othing prevented the State from requesting a lesser included offense instruction [at trial.]"[31] The *Haynes* majority reasoned that "the State's 'overreaching' conduct in both the double jeopardy and the reformation contexts is the same, thus requiring similar treatment and analysis."[32] Thus, while

purporting only to adhere to the narrowest ground agreed upon in *Collier,* *Haynes* gave credence to the notion that reformation is not an appropriate remedy when the State "overreaches" by failing to ensure that a lesser-included instruction is given at trial.

The "overreaching" rationale for refusing to reform judgments of conviction thus persisted in our case law until we came to decide *Bowen.*[33] In *Bowen,* the appellant was charged with, and convicted by a jury of, "misapplication of fiduciary property owned by or held for the benefit of [another] for the value of $200,000 or more."[34] The court of appeals, while "conclud[ing] that the evidence was legally insufficient to prove that the misapplied assets ... equaled $200,000 or more," found that the evidence was sufficient to prove that the misapplied assets equaled $103,344.[35] However, that court was, at the time it issued its opinion, "bound by *Collier,*" and so "did not reform the judgment to reflect a conviction for a lesser-included offense[,] because a lesser charge was not submitted to the jury."[36] With no other options available to it, the court of appeals ordered that the appellant be acquitted outright.[37]

This result, "[w]hile compatible with ... *Collier,*" we nonetheless deemed on discretionary review to be "unjust."[38] We concluded that the "purpose" of the *Collier* rule, "which was to prevent the State from overreaching and having an unfair advan-

27. *Id.* at 782.

28. *Id.* at 782–83.

29. *Id.* at 784 (Keasler, J., concurring).

30. 273 S.W.3d 183, 187 (Tex.Crim.App.2008).

31. *Id.* at 186–87 n. 5 (internal quotation marks omitted) (quoting *Stephens v. State,* 806 S.W.2d 812, 818–19 (Tex.Crim.App.1990)).

32. *Id.* at 187–88.

33. *Bowen v. State,* 374 S.W.3d 427 (Tex.Crim. App.2012).

34. *Id.* at 428.

35. *Id.*

36. *Id.* at 428–29.

37. *Id.* at 429.

38. *Id.* at 432.

tage over the defendant ... has proved to be unworkable in practice and inapplicable in many instances." [39] We noted, significantly, that the *Collier* rationale "does not consider that the defense may also have a strategic reason to not request a lesser-included offense instruction," in that "the defense may hope for outright acquittal" rather than a conviction for a lesser offense.[40] We also observed that the *Collier* rule could operate to prevent judgment reformation in circumstances in which the State "requests a lesser-included offense, but the trial court does not submit the instruction"—and as the State could not be said to be "going for broke" in such circumstances, the "overreaching rationale" was "impractical[.]" [41]

In light of all of the shortcomings (unjustness, unworkability, inapplicability, and impracticality) attendant to refusing to reform convictions on the basis of either party's "overreaching," both the holding of *Collier* (that the availability of reformation should depend either on the conduct of the parties at trial or the submission or non-submission of a lesser-included instruction) and its rationale (that the parties should not be rescued from their own "gamesmanship" or "overreaching") were repudiated.[42] Thus, post-*Bowen*, courts of appeals are no longer permitted to base their decisions whether to reform a judgment of conviction on either of these considerations. The focus is now on the evidence presented and the lesser-included conviction sought, rather than the parties' respective strategies in failing—or deciding whether—to seek an instruction at trial.

As a review of the preceding cases should make reasonably clear, nowhere in our case law, stretching back to *Collier*,

has it ever been suggested that it is the failure to preserve error that would prevent a party from requesting that a judgment be reformed. But that seems to have been precisely the court of appeals's reasoning in this regard. To the contrary, our case law makes it clear that the availability of reformation turns upon the authority of the courts of appeals, rather than whether the parties took appropriate steps to *invoke* that authority. Prior to *Bowen*, we held that the courts of appeals were not authorized to intervene on behalf of "overreaching" parties. In *Bowen*, we removed this impediment to the authority of the courts of appeals. Accordingly, the State's "st[anding] idly by as the trial court denied Appellant's request for" a lesser-included instruction had no impact on the authority of the court of appeals to reform the judgment. The court of appeals retained that authority all along, and no procedural hurdle stood in the way of its exercising that authority. The court of appeals erred to suggest otherwise. If reformation is an appropriate remedy in a particular case (an issue to which we turn next), *Bowen* makes clear that it should be applied regardless of whether either party requested or contested—or whether the jury was actually given—an instruction on the lesser-included offense at trial. The State's first point of error is sustained.

## B. The Applicability of *Bowen* to "Essential" Elements

We turn next to the holding of the court of appeals that "*Bowen* is clearly distinguishable from ... this case and ... is not relevant to our decision to acquit rather than reform the judgment to reflect a conviction as to the lesser-included offense of

---

39. *Id.* at 428.

40. *Id.* at 429.

41. *Id.* at 430.

42. *Id.* at 432.

attempted tampering with evidence."[43] The court of appeals identified the rationale of *Bowen* to be that "[b]ecause the value of the property misapplied was merely an 'aggravating element' used to determine the degree of the offense, ... the trial court should have reformed the judgment to reflect a conviction as to the lesser-included offense."[44] Applying this rationale to the facts of this case, the court of appeals reasoned that "[c]oncealment is not an 'aggravating element' of the offense of tampering with evidence, it is the very *sine qu[a] non* of that offense. As such, *Bowen* has no application to the facts of this case and we are not bound to consider whether to reform Appellant's judgment[.]"[45]

### 1. *Bowen v. State*

The court of appeals correctly recognized that the facts underlying our decision in *Bowen* were that "the State failed to prove ... an aggravating element of the offense, [but] proved the essential elements of the offense of misapplication of fiduciary property beyond a reasonable doubt."[46] But the court of appeals failed to properly discern the *reasoning* underlying our decision in *Bowen*—and it is the reasoning, rather than the facts, of *Bowen* that should decide its applicability to fu-

ture cases. The reasoning of *Bowen* was that an outright acquittal under those circumstances would be "unjust," since that result would involve "usurp[ing]" the "fact finder's determination of guilt."[47] In other words, *Bowen* directed courts of appeals to focus exclusively on what the jury actually found in the course of convicting the appellant of the greater offense and determined that to discount or disregard those sufficiently-evidenced findings would be mistaken.

▪ Extrapolating from that reasoning, we think that the result avoided in *Bowen* (the outright acquittal of an appellant against whom the State had adequately carried its burden except with respect to the extent of an "aggravating element") is no more "unjust" than an acquittal in *any* case in which the jury, by convicting the appellant of the greater-inclusive offense, necessarily (if implicitly) found every element necessary to convict him for the lesser-included offense. Any time the State carries its burden with respect to this lesser offense, and the jury, by its verdict, has necessarily found every constituent element of that lesser offense, the appellant would enjoy an "unjust" windfall from an outright acquittal.[48] At the same time, courts of appeals should limit the use of judgment reformation to those circum-

---

43. *Thornton*, 401 S.W.3d at 401.

44. *Id.*

45. *Id.*

46. *Bowen*, 374 S.W.3d at 432.

47. *Id.*

48. Simply to acknowledge that *Bowen* permits judgment reformation in those cases in which, after a finding that a particular element is not supported by sufficient evidence, a lesser offense is *explicitly* "established by the remaining ... elements," Dissenting Opinion at 319 (Alcala, J.), is not persuasively to argue that *Bowen* also *limited* reformation to those circumstances. *Bowen's* limiting

principle is that reformation of the trial court's judgment must never "unjust[ly]" operate to "usurp the fact finder's determination of guilt." Pursuant to *that* limiting principle, it is unclear why acquitting when there is an available lesser-included offense under Texas Code of Criminal Procedure Article 37.09(1), (2), or (3), *see id.*, would result in an unfair windfall to the appellant, while acquitting when the jury actually—not just theoretically—albeit implicitly, convicted him of an attempt (Article 37.09(4)) would work any less unfairly to the benefit of the defendant. A more circumscribed approach would not, to our satisfaction, account for the fact that there are circumstances in which a jury, simply by finding that the defendant committed the greater offense, *necessarily* found that he

stances when what is sought is a conviction for a lesser offense whose commission can be established from facts that the jury actually found. To do otherwise would be to usurp the jury's institutional function in the criminal justice system—to determine the facts. Reviewing courts should not, therefore, inquire as to (much less purport to find) what the jury *could have found* had it been tasked with making a finding that it was not originally asked to make; this would be inconsistent with *Bowen's* deference to jury determinations.[49]

■ As our recent opinion in *Britain v. State* makes clear, however, simply establishing that the jury's guilty verdict as to the greater offense *also* constitutes a jury finding of the elemental predicates for a conviction of the lesser offense is not necessarily sufficient to justify reformation under *Bowen*.[50] In *Britain*, the appellant was convicted of manslaughter for her allegedly reckless handling of her step-daughter's medical emergency.[51] The court of appeals in that case ordered that the appellant be acquitted, as there was "insufficient evidence that the appellant was

aware of but consciously disregarded a substantial and unjustifiable risk" of death.[52] On discretionary review, we rejected the State's argument that the court of appeals should have "reformed the verdict to the lesser-included offense of criminally negligent homicide," because in our view the State had also failed to produce any "evidence concerning the standard of care an ordinary person should be held to or that showed the appellant should have been aware of the risk to [the step-daughter]."[53] We cautioned that "an appellate court should not render a judgment of conviction for a lesser-included offense unless there is proof beyond a reasonable doubt of *all* elements of the lesser-included offense."[54] We noted that automatically reforming the judgment to a conviction for the lesser offense, without reviewing the sufficiency of the evidence to support the new conviction, ran the risk of allowing "whatever error led to the" conviction for the greater offense to also "extend to" the conviction for the lesser.[55]

■ In summary, then, after a court of appeals has found the evidence insufficient

---

also attempted to commit that offense—and that an outright acquittal under these circumstances, no less than an outright acquittal under circumstances in which there is an available Article 37.09(1), (2), or (3) lesser-included offense, could constitute the same lack of deference to the jury's factual determinations that necessitated reformation in *Bowen*.

49. We did not indulge in this kind of speculation in *Bowen*, since we did not, in that case, have to determine what the jury could have found. Instead, the jury's finding as to the extent of the misappropriation showed that the jury must have found, as a matter of logical necessity, that the appellant misappropriated *at least* $103,344. And as there also happened to be sufficient evidence to prove this amount of misappropriation, reformation of the judgment to reflect a conviction of the lesser offense was appropriate.

50. *See Britain v. State,* 412 S.W.3d 518 (Tex. Crim.App.2013).

51. *Id.* at 519.

52. *Id.* (internal quotation marks omitted).

53. *Id.* at 519, 523.

54. *Id.* at 521 (emphasis added).

55. *Id.* at 522. It was in view of this consideration that we said that "[w]hile *Bowen* held that a court of appeals *may* reform a judgment to a lesser-included offense, we have not held, and do not (under these facts) hold, that the court of appeals *must* do so." *Id.* at 521. To the extent that this language could be understood to grant courts of appeals unfettered discretion as to whether or not to reform a judgment, we wish to dispel any such notion. Read in context, this language means only to convey that a court of appeals is not

to support an appellant's conviction for a greater-inclusive offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answers to both are yes, the court is authorized—indeed required[56]—to avoid the "unjust" result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense.

## 2. Application

With these concepts in mind, we must determine whether the jury, in the course of finding the appellant guilty of actual tampering with evidence, necessarily found all of the elements of attempted tampering with evidence. A person commits the offense of tampering with evidence "if the person[,] . . . knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense."[57] A person commits an attempt if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."[58] Synthesizing these statutory definitions, we conclude that the first prong of the reformation analysis described above can be answered in the affirmative only if the jury, by its verdict, must necessarily have found that, 1) knowing that an offense had been committed, and with 2) the specific intent to conceal the crack pipe,[59] and 3) the specific intent to impair the availability of the crack pipe as evidence in a later

---

required to reform the judgment when the evidence is insufficient to support the lesser-included offense. Any broader reading of *Britain* would essentially operate to overrule *Bowen*—if the courts of appeals had unlimited discretion in whether or not to reform the judgment, we could not have justified reversing the court of appeals's judgment in *Bowen* (nor, indeed, would there have been a need for further exposition in *Britain* ).

56. *See* note 55, *ante.*

57. Tex Penal Code § 37.09(d)(1).

58. Tex. Penal Code § 15.01(a).

59. At first blush, Section 37.09 of the Penal Code seems not to require that the actor *intend* to conceal evidence in order for the actor to incur criminal liability for tampering with evidence. Tex Penal Code § 37.09(d)(1). If this were the case—that is, if the actor could be convicted of tampering with evidence on the basis of a jury finding that he harbored a culpable mental state less than intent with respect to the element of concealment—then a jury finding of guilt as to the completed offense would not necessarily constitute a jury finding of guilt as to the attempt, since a reviewing court would be unable to determine that the jury necessarily found that the actor harbored a "specific intent" to conceal the pipe. *See* Tex. Penal Code § 15.01(a).

However, the inclusion of the adverbial phrase "with the intent to impair its verity, legibility, or availability as evidence in any subsequent investigation" necessarily has the effect of requiring that the actor have a concomitant intent to alter, destroy, or conceal the evidence. An actor could not harbor an intent to impair the availability of the evidence, carry out that intent by means of concealment, and yet *not* have had a "conscious objective" to conceal the evidence. *See* Tex. Penal Code § 6.03(a) ("A person acts intentionally, or with intent, with respect to the

investigation or proceeding, the appellant 4) did an act amounting to more than mere preparation that 5) tended but failed to result in concealment of the crack pipe.

With respect to the first three of these elements, we note that the jury explicitly found these to have been proven when it found the appellant guilty of actual concealment, and so we need not inquire as to whether the jury made an implied or logically-necessary finding as to either of them.[60] Similarly, with respect to the

nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result."). He could not, for example, merely *know* that his conduct was of the nature of concealment while simultaneously harboring the conscious objective that the concealment render the evidence unavailable at a later date.

This conclusion finds further support in the language of the statute describing the offense of "Tampering with Governmental Record." *See* TEX. PENAL CODE § 37.10(a). In each of the six subsections delineating the categories of conduct that can result in criminal liability under that statute, the Legislature either provided a culpable mental state immediately preceding the *actus reus*, e.g., *id.* § 37.10(a)(1) ("... knowingly makes a false entry in, or false alteration of, a governmental record") or provided for a culpable mental state by way of an adverbial phrase following the *actus reus*. *E.g.*, *id.* § 37.10(a)(4) ("... possesses, sells, or offers to sell a governmental record or a blank governmental record form with intent that it be used unlawfully."). The tandem use of these two drafting techniques suggests that the Legislature intended them to have the same effect: to provide, in the latter instance, not only for a free-floating and independent culpable mental state, but a culpable mental state *attendant to* the proscribed conduct. That being the case, the synthesis of the tampering statute with the attempt statute does not operate to attach a higher culpable mental state to the element of concealment than the mental state the jury actually found in the course of convicting the appellant of tampering with evidence.

**60.** The dissent expresses a concern that "[n]o determination was made by the jury" that the appellant "specifically intended to conceal the glass pipe." Dissenting Opinion at 231 (Alcala, J.). But the "Court's Charge" to the jury in the appellant's trial read as follows:

[I]f you find from the evidence beyond a reasonable doubt that ... the defendant, GREGORY THORNTON, did then and there, knowing that an offense had been committed, to wit: Possession of Drug Paraphernalia, *intentionally and knowingly conceal physical evidence, to wit: glass pipe* with intent to impair the availability of glass pipe as evidence in a subsequent investigation, or official proceeding related to the said offense, then you will find the defendant guilty of the offense of tampering with evidence[.]

(*sic passim*) (emphasis added). By rendering a general verdict of "guilty," the jury signified its assent to the proposition that the State had carried its burden to prove beyond a reasonable doubt that, *inter alia*, the appellant "intentionally ... conceal[ed] physical evidence." For us to fully acquit the appellant on the basis that, *notwithstanding* its explicit finding that the appellant intentionally concealed the pipe, the jury may have harbored an implicit doubt that he "specifically" intended to conceal the pipe, would be to reach a result at least as "unjust" as the acquittal we reproved of in *Bowen*.

Furthermore, even if the jury had made no explicit finding *vis-à-vis* the appellant's specific intent to engage in an act of concealment, by finding that the appellant concealed the crack pipe with the "intent to impair its verity, legibility, or availability as evidence," the jury by implication *necessarily* found that he harbored a specific intent to conceal the pipe. *See* note 59, *supra*. We do not consider these findings to be "essentially the same," Dissenting Opinion at 231, or otherwise co-extensive, but we do perceive the latter to be subsumed by the former. And in light of these overlapping findings, the jury must also necessarily have found that the appellant harbored the specific intent to commit an offense. To hold otherwise would require us to subscribe to the inconsistent notions that the jury 1) believed that the appellant intended to impair the crack pipe's availability as evidence, 2) believed that he intended to conceal the crack pipe, and yet 3) harbored some implicit doubt about whether he specifically intended to commit the crime of tampering with evidence.

fourth element, we have no difficulty in concluding that the jury must have found this predicate—element to attempted tampering—an act amounting to more than mere preparation—to have been proven, since it found that his intentional conduct succeeded in concealing the pipe.[61]

With respect to the fifth element—whether the actions of the appellant "tend[ed] but fail[ed]" to effect the commission of the offense intended—we note that under Section 15.01(c) of the Penal Code, "[i]t is no defense to prosecution for criminal attempt that the offense attempted was actually committed." [62] Thus, in inquiring whether the jury necessarily found that the appellant's conduct failed to effectuate concealment, we need not inquire as to what the jury could have found, had it been tasked with adjudicating the appellant's guilt as to attempted tampering. Instead, we need only note that, by operation of Section 15.01(c), the jury's

finding of actual commission subsumes a finding that the appellant's conduct "tend[ed] but fail[ed]" to effect the commission of tampering with evidence. And in this sense, the jury must necessarily have found that the appellant's actions "tend[ed] but fail[ed]." [63]

Hence, in the course of convicting the appellant of tampering with evidence, the jury must necessarily (if implicitly) have found that, knowing that an offense had been committed, and with the dual specific intents to conceal the crack pipe and impair the availability of the crack pipe as evidence in a later investigation or proceeding, the appellant did an act amounting to more than mere preparation that tended but failed to result in concealment of the crack pipe. For this reason, the court of appeals erred to conclude that *Bowen* has no applicability to the facts of this case. The State's second point of error is sustained.

**61.** Any concern that the jury did not "necessarily f[in]d … that the defendant took steps amounting to 'more than mere preparation[,]' " Dissenting Opinion at 315 (Alcala, J.), is similarly problematic. There is a manifest incompatibility between the dual notions that the jury 1) believed that, while harboring an intent to impair the crack pipe's availability as evidence and engaging in conduct intended to conceal the pipe, the appellant in fact *successfully* concealed the pipe, and yet 2) had some lingering doubt that the appellant's conduct never extended past merely *preparing* to conceal the pipe. Given the incompatibility of these notions, subscription to the latter would require us to disregard or reject the former. This we decline to do. Instead, we think that acknowledging a jury finding that the appellant's conduct extended past mere preparation, even if it is implicit, pays appropriate deference to the fact that, by convicting the appellant of the completed offense, in this case the jury *also* effectively convicted him of the attempt. And given that this implicit finding of guilt as to the attempt is, as we will explain, supported by sufficient evidence, reforming the judgment to explicitly

reflect a conviction for this offense is precisely the surest way to *avoid* the undesirable result of an appellate court assuming the role of a "thirteenth juror."

**62.** Tex. Penal Code § 15.01(c).

**63.** In other words, the Legislature has essentially decided that proving the completed offense suffices to prove that the appellant's conduct "tend[ed] but fail[ed]" to effect commission. As it was the concern of *Bowen* to avoid manifest unjustness, we note that in Section 15.01(c) the Legislature seems to have sought to avoid what it perceived to be an injustice: that of a defendant evading liability for criminal attempt based solely on the State's proof of something greater than a mere attempt—success. Having alleged no more than an inchoate offense, the State should not have to suffer an acquittal in the event that its evidence happens to suffice to establish the completed offense. The "unjust[ness]" rationale underlying *Bowen*, therefore, is not disharmonious with the Legislative fiat contained in Section 15.01(c).

## 303

### C. Sufficiency of the Evidence to Show Attempted Tampering

 Having determined that the jury's guilty verdict as to tampering with evidence necessarily constitutes a finding that the appellant attempted to tamper with evidence, we turn now to the question of whether there is sufficient evidence to support a conviction for attempted tampering.[64] The court of appeals decided that there is not, primarily on the basis that the State failed to point to any "evidence of a specific intent to conceal" the pipe rather than "merely ... dispossess himself of it."[65] Finding the evidence to be legally sufficient to support a rational jury finding as to this element, we will reverse the court of appeals as to this holding as well.

In inquiring whether a conviction is supported by sufficient evidence, our task is to "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."[66] The relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[67] Under our case law, "[v]iewing the evidence 'in the light most favorable to the verdict' ... means that the reviewing court is required to defer to the jury's credibility and weight determinations[.]"[68] We should take care, in other words, not to act as a "thirteenth juror" by overturning a jury's duly-delivered verdict simply because we " 'disagree' with [that] verdict."[69]

 In this case, we are satisfied that the evidence, viewed in the light most favorable to the verdict, is sufficient to support a jury finding that the defendant harbored the specific intent to conceal the crack pipe and thereby impair its later availability as evidence. We discussed many of the issues relating to the sufficiency of evidence to show an actor's specific intent to commit an offense in *Laster v. State.*[70] In *Laster,* the jury was presented with evidence that the defendant, while walking past a young girl and her brother on a non-secluded sidewalk, "put his arm around [the girl's] waist and tried to pull her away."[71] The jury was also able to read a written statement from the defendant about "the voices in my head [telling] me to grab the little girl."[72] On the basis of this evidence alone, the jury convicted the defendant of attempted aggravated kidnapping. We were called upon to review whether the evidence was "sufficient to prove that [the defendant] had the intent to hold or secrete [the victim] in a

---

64. As we have already observed, *ante,* the jury's finding that the appellant's actions succeeded in concealing the pipe as a matter of law subsumes a finding that his actions "tend[ed] but fail[ed]" to effect concealment. But this same reasoning *cannot* lead us to the conclusion that the evidence is sufficient to support such a finding. As we said in *Britain,* "if the evidence does not prove the greater [element] it also may not have proven the lesser." *Britain,* 412 S.W.3d at 521. And as in *Britain,* "we cannot say (without a more thorough examination of the facts) that whatever error led to the finding of" concealment did not also "extend to" the element of "tends but fails." *Id.* at 522.

65. *Thornton,* 401 S.W.3d at 402.

66. *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

67. *Id.* at 319, 99 S.Ct. 2781.

68. *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim.App.2010).

69. *Id.* at 901 (quoting *Watson v. State,* 204 S.W.3d 404, 416 (Tex.Crim.App.2006)).

70. 275 S.W.3d 512 (Tex.Crim.App.2009).

71. *Id.* at 516.

72. *Id.*

place where she was unlikely to be found."[73] In concluding that the evidence was indeed sufficient, we emphasized that, while "[c]ircumstantial evidence of intent must be reviewed with the same scrutiny as other elements of an offense," we would no longer insist on "[e]xcluding every reasonable hypothesis of what the accused was thinking."[74] Importantly, "[a]s long as the verdict is supported by a *reasonable inference*, it is within the province of the factfinder to choose which inference is *most* reasonable."[75] In her dissenting opinion, Judge Cochran voiced a helpful insight that the majority did not contest: "[N]ot every grabbing or illegal restraint of a stranger ... evinces an intent to kidnap."[76]

Similarly, in cases of tampering with evidence, not every act of discarding an object evinces an intent to impair the availability of that object as evidence in a later investigation or proceeding. There may be cases in which the most inculpating inference the evidence would support is that the accused simply intended to dispossess himself of the object in order to more plausibly disclaim any connection to it.[77] And while it is true that "it is within the province of the factfinder to choose which inference is most reasonable,"[78] it is also true that any inference made by the jury must be supported by sufficient evidence.[79] Unlike the court of appeals, however, in this case we believe that the inference of a specific intent to impair the pipe's availability as evidence is sufficiently supported by the evidence presented at trial.

First, the jury heard evidence that 1) the crack pipe was both made of glass and smaller than a pen, and 2) at the time of the alleged tampering, "[t]he sun was coming up." We note that it would be reasonable for the jury to conclude that, if the circumstances were such that the appel-

---

73. *Id.*

74. *Id.* at 519–20.

75. *Id.* at 523 (emphasis added).

76. *Id.* at 526 (Cochran, J., dissenting).

77. For similar reasons, we do not disagree with the proposition that "evidence of a person throwing down contraband during a police pursuit or detention is [in]sufficient, *by itself*, to constitute either concealment or attempted concealment[.]" Dissenting Opinion at 314 (Cochran, J.) (emphasis added). But, as we will explain, we perceive the evidence in this case to show *more* than a mere "throwing down [of] contraband," so that that act does not stand "by itself" in supporting a conviction for attempted tampering with evidence.

Relatedly, while it is argued that the "act of abandoning contraband demonstrates prior possession of it, not its concealment," *id.,* we note that in closing, defense counsel made what was, in essence, this same argument to the jury:

Separating yourself from something that's illegal is not against the law. People walk away from crimes all the time. That's perfectly fine. Concealing it is a crime. * * * We talk about presumption of innocence. You need to presume an innocent intent. Until they prove otherwise beyond a reasonable doubt you have to presume an innocent intent. So what would be an innocent intent? Maybe he thought he had to give it to them. Maybe he thought he had to separate himself from the evidence. Those are all innocent and perfectly legal reasons. And that is what you have to presume.

The jury was therefore well aware that, behind a single course of conduct, a defendant might harbor either a concealing or a nonconcealing intent-and the jury decided, based on the evidence presented to it, that the appellant harbored the intent to conceal the pipe. Whatever conclusion we might have reached had we been called to serve on this jury cannot be allowed to inform our determination of the sufficiency of the evidence to support the jury's verdict.

78. *Laster,* 275 S.W.3d at 523.

79. *See id.* at 517–18.

lant stood absolutely no chance of concealing the pipe from the officers, it is less likely that he would have formulated the intent to conceal the pipe from the officers. In other words, it is less likely (though not impossible) that the appellant would harbor a "conscious objective" to cause a result he knew to be impossible.[80] Therefore, the reasonableness of the jury's inferences about the appellant's intent is informed (at least in some measure) by whether the jury could have reasonably inferred that the appellant believed that the pipe was, in fact, concealable.

From testimony about the pipe's material composition and size, the jury might reasonably have inferred that the pipe was lightweight and at least somewhat translucent; from testimony that "[t]he sun was coming up," the jury might reasonably have inferred that the portion of the sidewalk where the appellant dropped the pipe was not particularly well-lit. Based on these facts, the jury might also reasonably have inferred that the appellant did, in fact, believe it possible to conceal the pipe from the police—even if it lay in the middle of the sidewalk.[81] On the other hand, if the evidence alleged to have been concealed were, say, a neon pink bowling ball dropped at high noon, the jury would have

had far less reason to accept an inference that the appellant intended to conceal the evidence from the police.

Second, when the State asked Roberts whether the appellant "stealthily reached in [to his pocket]," Roberts responded affirmatively.[82] While not conclusive, testimony that the appellant had a "stealth[y]" demeanor as he attempted to dispose of the crack pipe would support a finding that he intended that the officers *never* notice the pipe. And while evidence of the appellant's "stealthi[ness]" in reaching for the pipe is not inconsistent with a simple intent to dispossess, it would be inappropriate to adopt this alternative "reasonable hypothesis" on the basis of evidence that could be interpreted—equally reasonably—in one of two ways.[83] After all, we are tasked with viewing the evidence in the light most favorable to the verdict.

Lastly, the jury also heard evidence—on multiple occasions—that the appellant "palmed" the pipe as he removed it from his pocket. The State argued both at trial and on appeal that, in the brief amount of time that the appellant successfully hid the pipe from Roberts's view by "palming" it, the appellant had "conceal[ed]" the pipe,

---

**80.** *See* Tex. Penal Code § 6.03(a) ("A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.").

**81.** We re-iterate that whether an object may be "hidden in plain sight" for purposes of tampering by concealment is not an issue that must be (or is) decided today—but if the appellant intended that the object be concealed, even "in plain sight," and took a beyond-preparatory step in effectuating his intent, he may still be subject to liability for criminal attempt.

**82.** While the appellant objected, at that point, to the State's leading question, he did not

request that the trial court instruct the jury to disregard Roberts's response. Therefore, the jury would not have known to disregard the testimony and would not have acted improperly in considering it as evidence during its deliberation. *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex.Crim.App.2007) ("Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes."). Regardless, "a reviewing court is permitted to consider all evidence in the trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination." *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim.App.2006).

**83.** *Laster,* 275 S.W.3d at 521.

as that term is used in Section 37.09(d)(1) of the Penal Code. While we express no opinion as to whether the "palming" of evidence can constitute actual concealment, we do think that repeated testimony that the appellant "palmed" the pipe is probative evidence of an *intent* to conceal the pipe. The jury would not have been unreasonable in thinking that by "palming" the pipe, the appellant's actions betrayed a "conscious objective" to prevent the officers from ever noticing the pipe. It would also have been reasonable for them to discount the fact that Roberts never lost sight of the pipe, since the element currently under consideration is the appellant's *mens rea*—not his success (or lack thereof) at actual concealment.[84]

Having reviewed the evidence presented at trial and determined that the same is sufficient to support a rational jury finding that the appellant harbored the specific intent to conceal evidence, we conclude that there is sufficient evidence to support a conviction for attempted tampering with evidence.[85] In light of this conclusion, we

---

**84.** We note, in addition, that the jury was able to witness Roberts physically demonstrate the appellant's actions. As should be reasonably clear, the precise way in which the appellant reached into his pocket and dropped the pipe would be helpful to the jury in discerning the appellant's intent at that moment. Having witnessed the officer's re-enactment of the appellant's bodily movements, the jury was privy to a number of relevant factors that we (and the court of appeals) simply are not, including: whether the appellant dropped the pipe behind his leg or to his side; how far the appellant's hand was from his body when he dropped the pipe; how slowly (or suddenly) his actions occurred; whether his posture or the configuration of his limbs conveyed surreptitiousness; and so on. On a cold appellate record, we are unable to discern any of these important facts—all we know is that the jury witnessed this re-enactment, and, in conjunction with the remaining evidence presented at trial, came to the conclusion that the appellant harbored the intent to impair the pipe's availability in a later investigation or proceeding.

**85.** We are aware, of course, that in order for there to be sufficient evidence to uphold a conviction for attempted tampering, the evidence presented at trial would, in addition, need to support rational jury findings that 1) knowing that a crime had been committed, the appellant 2) performed an act amounting to more than mere preparation that 3) tended but failed to effect the commission of the offense intended. And indeed, in what appears to have been an argumentative afterthought, the court of appeals also opined that, in this case, "[e]vidence of an act amounting to more than mere preparation is totally lacking." *Thornton*, 401 S.W.3d at 402. However, both the State's petition for discretionary review and the appellant's reply brief primarily address the court of appeals's holding with respect to specific intent, so we will dispose of these additional elements in summary fashion.

With regard to the first of these additional elements, we note that the jury was presented with evidence that the appellant discarded the pipe only upon discovering that he was in the presence of two police officers. Based on this evidence, the jury would not have been unreasonable in thinking that the reason the appellant discarded the pipe is that he hoped, one way or another, to avoid criminal liability for his possession of a crack pipe. With regard to the second of these additional elements, we think that merely by dropping the pipe, the appellant's conduct crossed the "imaginary line which separates ... 'mere preparation' from ... an act which 'tends [but fails] to effect the commission of the offense,'" because the appellant's action was the "last proximate act" in the appellant's attempt to commit his intended offense, and the "imaginary line" is drawn short of such acts. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim. App.1984) (quoting *McCravy v. State*, 642 S.W.2d 450, 460 (Tex.Crim.App.1980) (op. on State's motion for reh'g)). Thus, as the evidence is sufficient to show that the appellant dropped the pipe, it is also sufficient to establish that his conduct extended beyond "mere preparation."

Finally, with regard to the third of these additional elements, the appellant argues that "[his] action[s] not only failed to effect commission but would never even 'tend' to effect

hold that the court of appeals erred to conclude that "no rational trier of fact could have found that Appellant attempted to conceal evidence of any kind."[86] The State's third point of error is sustained.

## CONCLUSION

The court of appeals provided three independent justifications for refusing to reform the appellant's judgment of conviction to reflect a conviction for attempted tampering with evidence: 1) that the State "failed to preserve" the issue of reformation; 2) that *Bowen* "has no application to the facts of" the appellant's case; and 3) that the evidence presented at trial is "not legally sufficient to support a conviction of attempted tampering with evidence."[87] Each of these justifications fails to withstand scrutiny, and we therefore reverse the judgment of the court of appeals. The cause is remanded to the trial court to reform the judgment to reflect a conviction for the offense of attempted tampering with evidence and to hold a punishment hearing attendant to this post-reformation conviction.

the commission of the offense, because it is impossible to ever conceal evidence when you drop a piece of glass on concrete in front of an officer staring at you 10–20 feet away." Appellant's Reply Brief at 17. We note, however, that where "a defendant is charged with an attempt to commit a crime[,] it is immaterial whether the attempted crime is impossible of completion if, as in the present case, completion was apparently possible to the defendant who was acting with the intent to commit the crime[.]" *See Chen v. State*, 42 S.W.3d 926, 930 (Tex.Crim.App.2001) (internal quotation marks omitted) (quoting *People v. Grant*, 105 Cal.App.2d 347, 233 P.2d 660, 667 (1951)). As discussed, the evidence presented at trial was sufficient to support a reasonable inference that 1) concealment of the pipe—even if it lay in the middle of the sidewalk—was apparently possible to the appellant; and that 2) the appellant was acting with the intent to conceal the pipe when he dropped it. As a result, the jury was given

KELLER, P.J., filed a concurring opinion.

COCHRAN, J., filed a dissenting opinion in which MEYERS and JOHNSON, JJ., joined.

ALCALA, J., filed a dissenting opinion in which MEYERS, JOHNSON, and COCHRAN, JJ., joined.

KELLER, P.J., filed a concurring opinion.

In its sufficiency-of-the-evidence analysis, the court of appeals held that courts have construed the term "conceal" to mean "to hide, to remove from sight or notice, to keep from discovery or observation."[1] These definitions comport with definitions found in both legal and non-legal dictionaries.[2] Whatever else "conceal" might mean in the context of the tampering with evidence statute, it at least means to remove from sight. And removal from a person's sight occurs, at least, when a person's line of sight to the object in question is blocked.

sufficient evidence to reasonably conclude that the appellant's conduct would, under the facts "apparent[ ]" to him-that is, under the facts as he understood them—tend to effect concealment, but that he nevertheless failed to effectuate his intent.

86. *Thornton*, 401 S.W.3d at 402.

87. *Id.* at 400–01.

1. *Thornton v. State*, 401 S.W.3d 395, 398 (Tex. App.-Amarillo 2013, pet. granted).

2. *See* BLACK'S LAW DICTIONARY 261 (5th ed.1979) ("To hide, secrete, or withhold from the knowledge of others. To withdraw from observation; to withhold from utterance or declaration; to cover or keep from sight, or prevent discovery of."); WEBSTER'S NEW WORLD COLLEGE DICTIONARY 301 (4th ed.2000) ("1 to put out of sight; hide, 2 to keep from another's knowledge; keep secret").

Under this definition of "conceal," the evidence was sufficient to show that appellant had the specific intent to block the officers' line of sight to the crack pipe with his body when he stealthily palmed the crack pipe, dropped it, and walked forward to the officers. Although the court of appeals focused on Officer Roberts's testimony that the crack pipe never left his sight,[3] Officer Roberts also testified that he could not see the pipe while it was in appellant's hand and that appellant had concealed it there. The jury could also have concluded from the following colloquy between Officer Roberts and defense counsel that appellant intended to block Officer Roberts's view of the pipe when he walked toward the officer:

Q. So him moving away from the pipe concealed it from you?

A. Yes, sir.

Q. But not from your vision?

A. I saw the area to where he was where he dropped it and—

Q. I'm looking in a dictionary, conceal means the removing from sight or notice. Does that sound like an accurate definition of conceal?

A. Yes, sir.

Moreover, defense counsel elicited Officer Roberts's opinion that appellant's intent was to hide the crack pipe from the officer:

Q. Okay. And you're indicating to me and to this jury that you believe Mr. Thornton's intent was to hide that from you.

A. Yes, sir.

Q. And you're basing that on the fact that he dropped it in front of you and walked away from it?

A. Uh-huh.

This opinion regarding appellant's intent qualifies under Rule 701 as one that is "rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."[4]

In addition, pursuant to a request from the defense attorney, Officer Roberts conducted a demonstration of how the crack pipe was dropped. In argument to the jury, one of the prosecutors stated, without objection, that the demonstration and the officer's testimony showed that appellant dropped the crack pipe "on the ground behind his leg." Defense counsel disputed that interpretation in his jury argument, but there is no definitive evidence (such as a video or a "let the record reflect" statement by the trial court) of what exactly the demonstration showed. Absent definitive evidence that defense counsel's interpretation was indisputably correct, we must assume that the demonstration could rationally support a conclusion that appellant did indeed drop the crack pipe behind his body.

With these comments, I join the Court's opinion.

COCHRAN, J., filed a dissenting opinion in which MEYERS and JOHNSON, JJ., joined.

I respectfully dissent. Appellant was undeniably guilty of the Class C misdemeanor of possession of drug paraphernalia. Little did he know that, by clumsily trying to abandon his crack pipe, he was setting himself up for a third-degree felony conviction for tampering with evidence, and, because of his priors, a sentence of 45 years' imprisonment. The Seventh Court of Appeals found the evidence insufficient to support the element of "concealment,"

---

3. *Thornton,* 401 S.W.3d at 398.

4. *See* Tex.R. Evid. 701.

but this Court reforms the judgment to reflect the separate offense of "attempted" tampering with evidence and remands for a new punishment hearing. I think that this was a Class C offense from beginning to end. I disagree that evidence of a person throwing down contraband during a police pursuit or detention is sufficient, by itself, to constitute either concealment or attempted concealment for purposes of our tampering-with-evidence statute. That act of abandoning contraband demonstrates prior possession of it, not its concealment.[1]

Our tampering-with-evidence statute, Section 37.09 of the Penal Code, is based on the corresponding Model Penal Code provision, Section 241.7.[2] According to the Tennessee Supreme Court, some twenty-nine jurisdictions have enacted statutes based on Section 241.7.[3] "Most, if not all, jurisdictions that utilize a version of Section 241.7 of the Model Penal Code have

recognized that a defendant does not violate the statute when he or she merely 'abandons' physical evidence of a street crime while running from police or fleeing the scene of the crime."[4]

This case comes at a time when tampering or obstruction-of-justice laws are being "used increasingly against drug offenders who, in some fashion, attempt to destroy or conceal their drugs when being pursued by police."[5] But most states that have considered the matter have concluded that when

> a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant and in the presence and view of the police, this conduct does not constitute concealment that will support an evidence-tampering or obstruction charge, or a conviction that is additional to and separate from the ongoing possessory offense.[6]

---

1. For example, in *State v. Lasu*, 278 Neb. 180, 768 N.W.2d 447 (2009), the defendant walked through a service station, followed by a police officer. When he rounded a corner, the defendant dropped his baggie of marijuana into a large bin full of snack foods. The defendant made no effort to cover the drugs. When the officer walked by, he saw the drugs sitting in the bin and retrieved them. *Id.* at 449–50. The Nebraska Supreme Court found that this act was mere abandonment because the defendant did not discard the evidence in a place "where it was unlikely to be discovered." Instead, he "placed the evidence where it was quite likely to be discovered, even if he hoped that it might be less associated with him. . . . All [the defendant] attempted to conceal was the fact of his possession of the evidence—not the evidence itself." *Id.* at 452.

2. Section 241.7 of the Model Penal Code provides,
 A person commits a misdemeanor if, believing that an official proceeding or investigation is pending or about to be instituted, he:
 (1) alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding or investigation; or

 (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such proceeding or investigation.
 MODEL PENAL CODE § 241.7 (1962).

3. *State v. Hawkins*, 406 S.W.3d 121, 133 (Tenn.2013).

4. *Id.*

5. John F. Decker, *The Varying Parameters of Obstruction of Justice in American Criminal Law*, 65 LA. L.REV. 49, 51–52 (2004).

6. *In re M.F.*, 315 Ill.App.3d 641, 248 Ill.Dec. 463, 734 N.E.2d 171, 178 (2000); *see also Hawkins*, 406 S.W.3d at 134 ("In the wake of *Boice* [*v. State*, 560 So.2d 1383 (Fla.Dist.Ct. App.1990)], [*State v.*] *Patton* [898 S.W.2d 732, 736 (Tenn.Crim.App.1994)], and similar decisions, the jurisdictions that have enacted statutes based on Section 241.7 of the Model Penal Code have developed a 'unanimous' consensus that when a person who is committing a possessory offense drops evidence in the presence of police officers, and the officers are able to recover the evidence with

As the New Hampshire Supreme Court explained in holding that a juvenile did not "conceal" a cigarette pack for purposes of the tampering-with-evidence statute when he made eye contact with the police officer coming toward him,

> The juvenile may have intended to make it less likely that the cigarette pack would be associated with him or come to Officer Covie's attention by ridding his hands of it and abandoning it in the crowded hallway. It is important, however, not to confuse the juvenile's intent with his physical actions. [The tampering statute] uses the term "conceals" to define the *actus reus* of the offense. In

addition to the *actus reus*, the statute also requires proof of a culpable mental state—here, the juvenile's intent to "impair [the] verity or availability" of the evidence. That the juvenile may have intended to make it more difficult for Officer Covie to detect the contraband does not mean that the juvenile concealed the contraband when he abandoned it.[7]

Courts have also held that the same act of discarding contraband in the presence of police officers does not suffice to establish the offense of *attempted* tampering with evidence.[8] These courts have expressed

minimal effort, discarding the evidence amounts to 'mere abandonment,' not tampering."); *People v. Comage*, 241 Ill.2d 139, 349 Ill.Dec. 119, 946 N.E.2d 313, 317 (2011) (quoting and relying upon *In re M.F.* in concluding that defendant did not "conceal" crack pipe and push rod within the meaning of the obstructing justice statute when he threw the pipe over a privacy fence while being chased by police; although items were briefly out of officers' sight, the officers saw defendant throw them, they landed about ten feet away, and officers were easily able to walk around the fence and recover them, so defendant did not materially impede the officers' investigation); *Harris v. State*, 991 A.2d 1135, 1140 (Del.2010) ("Whether the defendant briefly hides evidence on a rooftop or in his mouth, if the police perceive the act of concealment and could immediately retrieve the evidence, the defendant has failed to 'suppress' the evidence"); *Vigue v. State*, 987 P.2d 204, 206 (Alaska Ct.App.1999) (noting that courts addressing issue of whether defendant who drops or tosses contraband away when detained by police "unanimously agree that a defendant's act of dropping or tossing away evidence in the sight of the police does not constitute the *actus reus* of tampering with physical evidence."); *In re Juvenile 2003–187*, 151 N.H. 14, 846 A.2d 1207, 1209–10 (N.H. 2004) (juvenile did not "conceal" cigarette pack when he threw it to floor and ran away through crowded school hallway); *Boice v. State*, 560 So.2d 1383 (Fla.Dist.Ct.App.1990); *State v. Patton*, 898 S.W.2d 732, 736 (Tenn. Crim.App.1994).

7. *In re Juvenile 2003–187*, 846 A.2d at 1210.

8. *Vigue*, 987 P.2d at 210–11 ("One could argue that, even if Vigue did not succeed in suppressing or concealing the cocaine, he nevertheless tried to do so, and so his conviction should be reduced to attempted evidence-tampering. Again, this would make sense if we interpreted the terms 'suppress' and 'conceal' broadly. But, like the courts of our sibling states, we are persuaded to give a narrow interpretation to the terms 'suppress' and 'conceal.' We are convinced that a broad reading of these terms would lead to results that are inexplicably harsh and probably not within the legislature's intent"; noting that, under state law, persons under 21 who smoke a cigarette (a violation punishable by fine only) would be subject to felony convictions and penalties if they "hid cigarettes in a pocket or purse when police officers approached" and "minor possessory offenses would often be converted to felonies with little reason."); *Stepovich v. State*, 299 P.3d 734, 741–42 (Alaska Ct.App.2013) (State could not convict defendant of attempted tampering with evidence when his conduct neither impaired the recovery nor the availability of the evidence); *Harris*, 991 A.2d at 1138 (defendant's attempt to conceal baggie containing marijuana by putting it in his mouth did not support conviction for tampering or attempted tampering with evidence; offense of tampering with evidence "criminalizes neither inchoate tampering nor tampering with items, but, rather, successful suppression of evidence.... It does not apply to an *attempted* 'act of concealment, alteration

three rationales for their holding: (1) the defendant's act of discarding contraband in the presence of, and in view of, police is an act of abandonment, not concealment for purposes of the tampering statute;[9] (2) the defendant's unsuccessful attempt to rid himself of contraband did not, in fact, impair its availability as evidence;[10] and (3) the legislature surely did not intend that the defendant's act of discarding drugs—a felony offense if tampering with evidence—should be punished more severely than his offense of possessing those same drugs.[11] As a Florida court explained, its

or destruction.' Rather, it applies when the defendant 'suppresses' the evidence by *actual* completed concealment, alteration, or destruction."); *E.I. v. State*, 25 So.3d 625, 627–28 (Fla.Dist.Ct.App.2009) (juvenile could not be adjudicated for offense of "attempted tampering with evidence" when he tossed driver's package of methamphetamine out window in clear sight of officer; "While E.I. was clearly trying to disassociate himself from the package, there is nothing about this act under the circumstances presented here that shows that E.I. was trying to alter, destroy, or conceal the package. Further, while E.I. did remove the package from his hand, he did not remove it from the scene of the traffic stop. Thus, this act was factually and legally nothing more than abandonment, and the trial court should have granted E.I.'s motion for judgment of dismissal.").

9. *Commonwealth v. Delgado*, 544 Pa. 591, 679 A.2d 223, 224–25 (1996) (defendant's act of "discarding contraband in plain view of the pursuing officer" did not constitute tampering with evidence because he had not destroyed, altered, nor concealed evidence within the meaning of the statute; defendant's conduct amounted to "nothing more than an abandonment of the evidence."); *State v. Sharpless*, 314 N.J.Super. 440, 715 A.2d 333, 342 (N.J.Super.Ct.App.Div.1998) (addressing whether defendant's "act of discarding criminal contraband upon the approach of a police officer constitute[d] evidence tampering within the intent of [the New Jersey statute]"; holding that it did not; it was mere abandonment of the contraband); *McKinney v. State*, 640 So.2d 1183, 1185 (Fla.Dist.Ct.App.1994) ("[A] brief interruption of a police officer's visual contact with physical evidence that is on or near one's body is not sufficient to constitute concealment").

10. *Comage*, 349 Ill.Dec. 119, 946 N.E.2d at 319 (noting that those courts that have upheld convictions for evidence when the defendant swallowed contraband in the hope that it will

go unrecovered is not merely that it was temporarily out of the police officer's sight, but that the defendant "had, in fact, materially impeded the officer's investigation"); *Anderson v. State*, 123 P.3d 1110, 1119 (Alaska Ct.App.2005) ("This is not to say that the act of tossing away evidence can never constitute evidence tampering. The test appears to be whether the defendant disposed of the evidence in a manner that destroyed it or that made its recovery substantially more difficult or impossible."); *Harris*, 991 A.2d at 1138 (no "concealment" when contraband was "immediately retrievable"); *compare State v. Mendez*, 175 N.J. 201, 814 A.2d 1043, 1050 (2002) (upholding tampering conviction of defendant who held a bag of powder cocaine outside the window of his car and allowed the wind to disperse the powder; even though he performed this action in the sight of the pursuing police, his conduct essentially precluded all efforts to recover the evidence; holding that one who possesses and then destroys cocaine has completed a possessory offense and then taken a new step in completing a separate offense involving destruction of physical evidence; the act of preventing "an intact retrieval" of the cocaine completes the evidence-tampering offense); *see generally*, 67 C.J.S. *Obstructing Justice* § 1, at 67 (2002) ("The phrase 'obstructing justice' as used in connection with offenses arising out of such conduct means impeding or obstructing those who seek justice in a court[.]"); U.S. Sentencing Guidelines Manual § 3C1.1 (2010) (under federal sentencing guidelines, a defendant's attempt to swallow or throw away a controlled substance is not, by itself, sufficient to warrant an adjustment for obstruction unless it results in a "material hindrance" to the official investigation).

11. *Delgado*, 679 A.2d at 225 (noting that Pennsylvania law classifies tampering with physical evidence as a higher degree of crime than possession of cocaine; "Under these circumstances, we do not believe that the General Assembly intended the simple act of

legislature did not intend to impose additional felony charges on a person who discards a misdemeanor amount of contraband while being observed by pursuing police officers:

> If the defendants' [conduct] in this case constituted tampering [with evidence], then a nineteen-year-old who threw a can of beer from his car when stopped by a police officer would commit not only the second-degree misdemeanor of possession of alcoholic beverages, but also the third-degree felony of tampering with the evidence. We do not believe that the legislature intended an additional felony under such circumstances.[12]

Many of these cases hold that the evidence is insufficient to support a tampering conviction because there is no evidence that the defendant specifically intended to conceal evidence *with the intent to impair its usefulness at a future trial.* Instead, the evidence shows that the defendant merely intended to distance himself from the evidence. As in "What? Who me? That's not my crack pipe."[13] As Justice Yeakel explained in *Hollingsworth v. State*,[14] the evidence was insufficient in that case to prove that the defendant was carrying cocaine in his mouth with the specific intent to impair its availability as evidence. Rather, he was carrying it in mouth "because that is how crack cocaine is commonly carried, undoubtedly to keep it from public view."[15] When the defendant saw police officers, he spit it out-an act that *exposed* the cocaine to the officer's view.[16] In most of these abandonment cases, the defendant's act of abandonment *exposes*, rather than *conceals*, the contraband.

Prosecutions for *attempted* tampering with the evidence are even more untena-

---

abandoning [contraband] in plain view of the police to constitute the commission of an additional crime of a greater degree.").

12. *Boice v. State*, 560 So.2d 1383, 1385 (Fla. Dist.Ct.App.1990); *see also State v. Patton*, 898 S.W.2d 732, 736 (Tenn.Crim.App.1994) (citing *Boice* and stating "we do not believe that the legislature intended to inflict greater punishment upon an individual for attempting to discard evidence [of a crime] than he would receive for commission of the crime. Statutes must not be construed in a manner which may lead to absurd results.... If 'mere abandonment' of contraband falls within the class of [conduct] made criminal by [the evidence-tampering statute], there is a substantial likelihood of an unreasonable result. Thus, ... [e]ven if the factual allegations within the indictment are accurate, the defendant, in our view, has not violated the [evidence-tampering] statute.").

13. *See In re Juvenile 2003–187*, 151 N.H. 14, 846 A.2d 1207, 1209–10 (2004); *State v. Lasu*, 278 Neb. 180, 768 N.W.2d 447, 452 (2009).

14. 15 S.W.3d 586, 595 (Tex.App.-Austin 2000, no pet.).

15. *Id.*

16. *Id.* According to the New Jersey Superior Court, in posing the hypothetical of a defendant who carried his cocaine in his sock, the State's theory would require a person to "have the cocaine in plain view" to avoid committing the separate felony crime of tampering with evidence by concealment as well as the underlying crime of drug possession. *Sharpless*, 715 A.2d at 343 (quoting *State v. Fuqua*, 303 N.J.Super. 40, 696 A.2d 44, 46 (N.J.Super.Ct.App.Div.1997) (concluding that "If the State is correct, all illegal substances, weapons, and even illicit reading material, would be required to be carried in plain view or else the possessor could be convicted of a third-or fourth-degree crime or of a disorderly persons offense, in addition to any other substantive offense.")). Like the Austin Court of Appeals in *Holloway*, out-of-state courts have uniformly rejected this position. And what about the girl who keeps a marijuana joint in the car console? Or the teenager with an unprescribed pill in her pocket or two beer cans in the cooler? Or the elderly woman who shoplifts a $1.00 candy bar (a Class C theft) and then tosses it away when a police officer yells, "Stop, thief!"

ble. I agree with the court of appeals in this case that the claim that appellant's act of " 'palming' . . . the pipe to remove it from his pocket constituted *attempted* concealment" requires total speculation about whether appellant acted with the specific intent to conceal the pipe or just abandon it.[17] "Without evidence of a specific intent to conceal, Appellant's merely reaching into his pocket and removing the pipe is no more *attempted* concealment than having a drink is *attempted* public intoxication."[18] Appellant's act *exposed* the crack pipe, so how can a jury determine, beyond a reasonable doubt, that he specifically intended to *conceal* the crack pipe by that act of exposure? This logic escapes me.

The Tennessee Supreme Court recently explained that a tampering-with-evidence conviction may not be upheld if the evidence was not permanently altered or destroyed and its concealment delayed minimally, if at all, the officers' discovery of it:

> In drug cases, for example, convictions for tampering by concealment have been upheld when a defendant swallows drugs and when a defendant flushes drugs down a toilet as police approach and the drugs are recovered. One defendant's conviction was upheld when he tossed

the drugs out of his moving vehicle, kept driving for a half mile, and the drugs were never found. Another defendant's conviction was upheld when he tried to hide his drugs in one pocket of a billiards table.

Conversely, in other drug cases involving alleged concealment, courts have found mere abandonment when a defendant hides drugs in his socks or in his pocket, tosses drugs onto the roof of a garage while being pursued, drops drugs off a roof in view of police, or throws drug evidence over a wooden privacy fence while officers are in pursuit. Dropping a marijuana cigarette into a sewer is mere abandonment, but dropping soluble drugs down a sewer drain could make them irretrievable and could support a tampering conviction. Hiding drugs in one's mouth without successfully swallowing them also may not constitute tampering.[19]

For these reasons, I agree with those courts holding that, with regard to possessory offenses, the tampering-with-evidence statute applies only to

(A) *completed* crimes in which the evidence is permanently destroyed, altered, or concealed.[20] For example,

---

17. *Thornton v. State*, 401 S.W.3d 395, 402 (Tex.App.-Amarillo 2013).

18. *Id.* (emphasis added).

19. *State v. Hawkins*, 406 S.W.3d 121, 135 (Tenn.2013) (citations omitted).

20. *See Vigue v. State*, 987 P.2d 204, 210–11 (Alaka Ct.App.1999). As that court explained,

> If the terms "suppress" and "conceal" are construed broadly, then it is possible to speak of Vigue's conduct as an act of suppression or concealment. By ridding his pockets and hands of the cocaine, Vigue probably intended to make it less likely that the cocaine would come to Officer Kantor's attention.
>
> But it is important not to confuse Vigue's intent with his physical actions. The evi-

dence-tampering statute uses the terms "suppress" and "conceal" to define the *actus reus* of the crime. In addition to this *actus reus*, the statute also requires proof of a culpable mental state-here, Vigue's intent to "impair [the] availability" of the evidence. The fact that Vigue intended to make it harder for Officer Kantor to detect the cocaine does not mean that Vigue actually succeeded in "suppressing" or "concealing" the cocaine when he tossed or dropped it to the ground. Indeed, under the facts of this case, no suppression or concealment occurred: Officer Kantor observed Vigue's action and was alerted to the possibility that something might be on the ground at the spot where Vigue had been standing. We agree with the courts of Pennsylvania, Florida, Tennessee, and New

if a defendant swallows the purported contraband, he has destroyed its usefulness as evidence; because the evidence is gone, the defendant cannot be convicted of the drug offense, but he can be convicted of tampering with evidence;[21] OR

(B) The attempted destruction, alteration, or concealment has materially impeded the officer's investigation. For example, if the defendant tosses bags of cocaine down the toilet and flushes it, but the police are able to disconnect the plumbing and retrieve the soggy, but identifiable baggies, the defendant's act of concealment was unsuccessful, but it materially impeded the officers.

I respectfully dissent to turning this Class C misdemeanor into a state-jail felony merely because appellant tried to abandon his crack pipe by exposing it to the officers' view, not concealing from their view.

ALCALA, J., filed a dissenting opinion in which MEYERS, JOHNSON, and COCHRAN, JJ., joined.

I respectfully dissent from the majority opinion's holding that the judgment in this case should be reformed from tampering with physical evidence to a criminal attempt to commit that offense. Although I recognize that criminal attempt is, as a matter of law, characterized as a lesser-included offense of any statutory offense, it is unlike other lesser-included offenses in that it contains an additional element not found in the greater offense: the specific intent to commit an offense. Because the jury, in finding Gregory Thornton, appellant, guilty of the offense of tampering with physical evidence, did not necessarily find that he acted with the specific intent to conceal evidence from officers, I conclude that the judgment should not be reformed to a conviction for criminal attempt. As explained further below, I conclude that reformation of a judgment to criminal attempt does not fit within the reasoning of this Court's past decisions that discuss when reformation to a lesser offense is permissible. I further conclude that the appropriate resolution of this case is outright acquittal or, at most, a remand for a trial on criminal attempt, rather than the rendition of judgment reforming the conviction to criminal attempt.

## I. Reforming to Criminal Attempt Does Not Fit Within Rationale For Permitting Reformation of Judgments

Permitting reformation of the judgment to criminal attempt is inconsistent with the

---

Jersey that conduct such as Vigue's amounts to nothing more than abandonment of the evidence, not suppression or concealment of evidence.

*Id.*

21. *See, e.g., Barrow v. State,* 241 S.W.3d 919, 923 (Tex.App.-Eastland 2007, pet. ref'd) (evidence sufficient to support tampering conviction when defendant swallowed what officer had seen as a white rock-like object that appeared to be crack cocaine during traffic stop); *Vaughn v. State,* 33 S.W.3d 901, 903–04 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (evidence sufficient to support tampering conviction when defendant flushed substance that officer believed was cocaine down the toilet); *Stimson v. State,* 05–07–01622–CR, 2008 WL 2841512, *2–3 (Tex.App.-Dallas, July 24, 2008) (not designated for publication) (evidence sufficient to support conviction for tampering with evidence when defendant swallowed what was thought to be a rock of crack cocaine at police station); *Harris v. State,* No. 12–07–00279–CR, 2008 WL 2814879, *2–3 (Tex.App.-Tyler, July 23, 2008, pet. ref'd) (not designated for publication) (evidence sufficient to support tampering conviction when defendant, stopped for traffic offense, admitted that he had a "marijuana roach" and then ate it).

rationale underlying the law in this area, which is that an appellate court must defer to the jury's institutional role as fact finder and reform a judgment only when it is clear from the jury's verdict that it necessarily found the defendant guilty of a lesser-included offense based on sufficient evidence. I joined the majority opinions in *Bowen v. State* and *Britain v. State,* both of which generally stood for the proposition that reformation of the judgment is proper when, although the evidence is deemed insufficient as to some element of the charged offense, the State has nevertheless proved all the elements of a lesser-included offense beyond a reasonable doubt. *See Britain v. State,* 412 S.W.3d 518, 521 (Tex.Crim.App.2013); *Bowen v. State,* 374 S.W.3d 427, 431–32 (Tex.Crim. App.2012). And I remain convinced that those holdings were correct in their ultimate application of that general proposition. Where I part ways with the Court's opinion today is in its expansion of this general holding to now reform a judgment to a lesser-included offense that is not merely different from the greater due to the absence of an aggravating element or an element that may be clearly isolated, but is instead a criminal attempt to commit the greater offense. Under the circumstances of this case, it is not clear to me that the jury necessarily found or that the State proved all the elements of criminal attempt to commit evidence tampering beyond a reasonable doubt. Applying the reasoning of *Bowen* and *Britain* to this case, I conclude that those cases do not compel reformation of the judgment here.

In *Bowen,* this Court held that the court of appeals erred by entering a judgment of acquittal when the evidence adduced at trial, although insufficient to establish Bowen's conviction for misapplication of $200,000 or more in fiduciary property, was nevertheless sufficient to sustain her conviction for the second-degree offense of misapplication of fiduciary property valued over $100,000. *Bowen,* 374 S.W.3d at 431–32. In holding that reformation was required under those circumstances, the Court reasoned that acquittal would be "improper" and "unjust" because, "although the State failed to prove the value of the property misapplied, which is an aggravating element of the offense, the State proved the essential elements of the offense of misapplication of fiduciary property beyond a reasonable doubt." *Id.* at 432. This Court additionally observed that the "fact finder's determination of guilt should not be usurped in the punishment phase if the evidence is legally sufficient to support a conviction." *Id.*

When the evidentiary failure at trial involves only an aggravating element, such as the State's failure to prove a particular dollar amount or drug amount, an appellate court is not called upon to act as a thirteenth juror, examining the details of the record to surmise how the jury may have assessed certain evidence. Under those circumstances, it would clearly be "unjust" and would constitute a usurpation of the jury's institutional role as fact finder to acquit a defendant who is indisputably guilty of the lesser offense. *Id.* at 431–32. By contrast, to determine whether a defendant has criminally attempted to commit an offense for which the evidence has already been deemed insufficient as to a central or essential element, as in the instant case, an appellate court must conduct a complete review of the record in an effort to determine whether the jury necessarily found, and whether the evidence clearly establishes, that the defendant took steps amounting to "more than mere preparation" to commit the offense while possessing the specific intent to commit that offense. *See* TEX. PENAL CODE § 15.01(a). This type of reformation of the judgment to criminal attempt is inconsistent with the

rationale of *Bowen,* a case in which this Court reformed the judgment only when it was abundantly clear from the jury's verdict that it necessarily found the defendant guilty of the lesser-included offense and that the evidence was sufficient to establish that offense.

More recently, in *Britain,* this Court applied the reasoning of *Bowen* but reached the opposite result, holding that reformation to a lesser-included offense was not required. *See Britain,* 412 S.W.3d at 521. In *Britain,* the court of appeals acquitted the defendant after it found insufficient evidence to sustain her manslaughter conviction based on the State's failure to prove that she acted recklessly. *Id.* at 519. On discretionary review, the State argued that the court of appeals erred by failing to reform the conviction to the lesser-included offense of criminally negligent homicide, but this Court disagreed. *Id.* at 521. After reviewing the evidence in the record, this Court concluded that reformation would be improper because the State had failed to prove the elements of the lesser-included offense beyond a reasonable doubt. *Id.* at 522–23. Specifically, it determined that the State had failed to prove that the defendant acted with negligence, the applicable mental state for criminally negligent homicide. *Id.* at 523.

This Court cautioned in *Britain* that an appellate court considering whether to reform a judgment must take great care to ensure that "whatever error led to the" reversal on sufficiency grounds "did not extend to the entire evaluation of" that element of the offense. *Id.* at 522. Explaining its approach in that case, the Court stated,

It is much easier to say that the lesser-included offense has been proven in cases in which the evidence is legally insufficient only as to an aggravating element, as in *Bowen.* . . . In that case, it was easy for the Court of Appeals to render a verdict for the lesser-included offense because there was no question that the essential elements of the lesser crime were proven. . . .

In this case, the State has failed to prove an essential element, something that cannot be merely eliminated from the conviction. In such cases an appellate court should not render a judgment of conviction for a lesser-included offense *unless there is proof beyond a reasonable doubt of all elements of the lesser-included offense* . . . .

*Id.* at 521 (emphasis added). The difficult question before us today is how *Britain's* cautionary language might apply to a situation involving a request by the State to reform a judgment to a criminal attempt. In the present case, the decision to reform the judgment to criminal attempt requires this Court to consider whether the evidence is sufficient to find that appellant attempted to conceal a glass crack pipe by doing an act (e.g., palming the pipe and dropping it on the ground), that was more than mere preparation to conceal but less than an effective concealment of the pipe, all while keeping in mind that the evidence has already been deemed insufficient to show that appellant actually concealed the crack pipe. This is an odd task and, in terms of the required analysis, I find that this case raises many of the concerns that were present in *Britain* because of the risk of the evidentiary error at trial extending to the elements of the lesser offense. Moreover, it is not clear to me that the rationale that motivated this Court's holding in *Bowen*—that the portion of a jury's verdict that is clearly correct should not be unjustly usurped through acquittal—weighs in favor of reformation under these circumstances, where the jury's verdict has already been critically undermined

by the appellate court's finding of insufficiency as to the element of concealment.

In light of the concerns described above, I would hold that this Court should narrowly limit reformation to situations in which (1) the evidentiary failure at trial does not extend to the elements of the lesser-included offense (this was decided by *Britain*), (2) the remaining elements clearly establish a lesser offense either by simply removing the element determined to have insufficient evidence or by determining that there is, even after accounting for the sufficiency error at trial, proof beyond a reasonable doubt to sustain a conviction on the lesser offense (this was decided by *Bowen* and *Britain*), and (3) the record shows that the jury made a factual finding rather than a theoretical finding on all the elements of the lesser offense to which the judgment will be reformed (this is the issue in this case). Here, the first situation compels this Court to decline to reform the judgment to criminal attempt because, as in *Britain*, the evidentiary failure on the greater offense spills over into the evidence necessary for a finding of guilt on the lesser offense. But, in any event, the third situation would, at most, compel this Court to remand the case for a trial on criminal attempt because the record does not establish that the jury found all the facts necessary to establish the offense of criminal attempt when it found appellant guilty of the greater offense.

My proposed approach to reformation of the judgment is consistent with that taken by the federal courts of appeals, which have long employed a rule that permits "entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that *affect only the greater offense.*" *Rutledge v. United States,* 517 U.S. 292, 306, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (emphasis added); *see also United States v. Baylor,* 97 F.3d 542, 548 (D.C.Cir.1996) (same).[1] Stated differently, the "long accepted" federal rule

> grants a reviewing court authority to enter judgment on a lesser included offense when it finds that *those elements exclusive to the greater* ... are not supported by sufficient evidence to sustain the jury's verdict, but that there is sufficient evidence to sustain a finding of guilt on all elements of the lesser offense.

*United States v. Dickinson,* 706 F.2d 88, 93 (2d Cir.1983) (emphasis added); *see also United States v. Rojas Alvarez,* 451 F.3d 320, 328 (5th Cir.2006) (recognizing that the circumstances in which such authority may be exercised are "limited" and that it must be clear that the evidence "sufficiently sustains all the elements of [the lesser] offense") (citations omitted); *United States v. Skipper,* 74 F.3d 608, 611–12 (5th Cir.1996) (stating that reformation of judgment permitted only when jury "necessarily found all of the elements" of lesser-included offense).[2] This approach

---

**1.** Several states have adopted similar approaches. *See, e.g., State v. Fana,* 109 Conn. App. 797, 953 A.2d 898, 912 (2008) (stating that modification of judgment to lesser-included offense proper when "the element, which the reviewing court found the evidence insufficient to support, was distinct from the other elements of the charged crime"; when that element was eliminated, "the remaining elements were themselves adequate to support a conviction of a lesser included of-

fense") (citations omitted); *Ritchie v. State,* 243 Ind. 614, 189 N.E.2d 575, 577 (1963) (holding that "reviewing court, in a proper case, may modify a judgment of conviction below and affirm it as a conviction of a lesser degree of the offense charged, or of a lesser crime included therein, *where the errors do not affect the conviction of the lesser offense*") (emphasis added).

**2.** Some federal courts of appeals have concluded that reformation is appropriate only

generally limits an appellate court's authority to reform a judgment to those situations in which the lesser offense is unaffected by the error that led to reversal of the greater offense.[3] Such an approach takes account of the fact that, as this Court recognized in *Bowen*, it would be "unjust" to acquit a defendant who is clearly guilty of the lesser-included offense, and that the jury's guilty verdict should not be unnecessarily usurped. *Bowen*, 374 S.W.3d at 432. But it also recognizes that appellate courts are not well-suited to making factual determinations based on a weighing of evidence in the record, particularly with respect to questions that have not been expressly answered by the jury. These are the types of factual inquiries that are better left to juries at trial, and cannot reliably or fairly be answered by a reviewing court on appeal.

## II. At Most, This Case Should be Remanded for Trial on Criminal Attempt

I conclude that an appellate court should almost never reform a judgment to a criminal attempt because, in rendering a verdict of guilt on the greater offense, the jury has not found all the elements necessary to constitute a conviction for criminal attempt.[4] Although I acknowledge that the Texas Code of Criminal Procedure classifies criminal attempt as a lesser-included offense of any charged offense,[5] this

---

when the jury has been instructed on a lesser-included offense. *See, e.g., United States v. Dhinsa*, 243 F.3d 635, 676 (2d Cir.2001); *United States v. Dinkane*, 17 F.3d 1192, 1198 (9th Cir.1994). Others have reached the opposite conclusion, holding that a jury instruction on a lesser-included offense is not a prerequisite to an appellate court's exercise of its authority to reform a judgment to a lesser-included offense. *See, e.g., United States v. Hunt*, 129 F.3d 739, 745–46 (5th Cir.1997); *United States v. Smith*, 13 F.3d 380, 383 (10th Cir.1993); *United States v. Cobb*, 558 F.2d 486, 489 (8th Cir.1977). In *Bowen*, this Court sided with the latter approach, and I continue to agree with that position. *See Bowen v. State*, 374 S.W.3d 427, 432 (Tex.Crim.App. 2012). But in doing so, this Court also abandoned the inherent limitation of restricting reformation to only those lesser offenses included in the jury instructions. Now, there is no such limitation.

3. Applying this principle, federal courts have generally reformed judgments to convictions for lesser-included offenses when the lesser offense is established as a matter of law after removal of the element affected by the sufficiency error. *See, e.g., United States v. Eiland*, 738 F.3d 338, 359 (D.C.Cir.2013) (vacating conviction for Continuing Criminal Enterprise under 21 U.S.C. § 848 due to insufficient evidence to sustain finding that appellant managed five or more individuals in drug conspiracy, but remanding for imposi-

tion of judgment on lesser-included offense of narcotics conspiracy); *United States v. Hickman*, 626 F.3d 756, 770–71 (4th Cir.2010) (vacating conviction for conspiracy to distribute one kilogram or more of heroin due to insufficient evidence as to quantity of drugs, but remanding for imposition of judgment on lesser-included offense of conspiracy to distribute 100 grams or more of heroin); *United States v. Rojas Alvarez*, 451 F.3d 320, 328–29 (5th Cir.2006) (vacating conviction for drug activity within 1000 feet of a playground in violation of 21 U.S.C. §§ 841 and 860 due to insufficient evidence to establish playground element, but remanding for entry of judgment on lesser-included offense of distribution of controlled substance).

4. I leave the door open to the possibility that a statute and jury instructions on the greater offense may, in some hypothetical case, include the specific-intent finding required for criminal attempt offenses.

5. The Texas Code of Criminal Procedure provides,

An offense is a lesser included offense if:
(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

Court's precedents and the Rules of Appellate Procedure do not mandate that a conviction reversed on sufficiency grounds be automatically reformed to any available lesser-included offense. *See Britain,* 412 S.W.3d at 521 (acknowledging that *Bowen* held that "a court of appeals *may* reform a judgment to a lesser-included offense," but stating that this Court has never held "that the court of appeals *must* do so"); TEX.R.APP. P. 43.2 (stating that court of appeals "may" modify the trial court's judgment or reverse and render the judgment that the trial court should have rendered).[6] Instead, these authorities clearly permit an appellate court to forego reformation of the judgment when, among other things, the "interests of justice require a remand." TEX.R.APP. P. 43.3. With the exception of criminal attempt, I conclude that the other three categories of lesser-included offenses described in Code of Criminal Procedure Article 37.09 will almost always lend themselves to reformation of the judgment because in those situations, the evidentiary failure will likely be isolated to a single element of the greater offense that can easily be excised. For example, if the greater offense consists of five elements, and there is an evidentiary failure as to the fifth element, then the judgment may be reformed to the lesser offense that is established by the remaining four elements. This type of determination can be made by an appellate court

as a matter of law and does not require an extensive review of the record to determine whether the jury necessarily found all the elements of the lesser offense. By focusing on a narrow difference between the greater and lesser offenses that can be isolated in the record, these situations lend themselves to reformation of a judgment as a matter of law.

By contrast, although the Code of Criminal Procedure expressly provides that a criminal attempt is a lesser-included offense of any charged offense, there is a conflict between that determination and the language in the Texas Penal Code, which provides that a person commits criminal attempt if he, with the specific intent to commit an offense, does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. *See* TEX. PENAL CODE § 15.01(a). The language of the criminal-attempt statute thus contains an added element not found in the greater offense: the specific intent to commit an offense. *Id.* In light of this conflict between the Code of Criminal Procedure and the Penal Code, I conclude that the judgment must either be rendered and reformed to an acquittal or, at most, remanded for a trial on criminal attempt in the interests of justice because the jury would have never passed on the question of whether the defendant acted with the specific intent to commit an offense. *Id.* In

---

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
(4) it consists of an attempt to commit the offense charged or an otherwise included offense.
TEX.CODE CRIM. PROC. ART. 37.09.

**6.** Texas Rule of Appellate Procedure 43.2, from which an appellate court derives its authority to reform a judgment, provides:

The court of appeals may:

(a) affirm the trial court's judgment in whole or in part;
(b) modify the trial court's judgment and affirm it as modified;
(c) reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered;
(d) reverse the trial court's judgment and remand the case for further proceedings;
(e) vacate the trial court's judgment and dismiss the case; or
(f) dismiss the appeal.
TEX.R.APP. P. 43.2.

any event, I note that making reformation mandatory in these cases runs contrary to the principle that an appellate court is authorized to determine whether remand would be more appropriate than rendering judgment in any given case. *See* Tex. R.App. P. 43.3 (appellate court permitted to remand when "necessary for further proceedings" or when "interests of justice" so require).

The quandary of reforming a judgment to criminal attempt is reflected in the majority opinion's holding today, which concludes that reformation of the judgment is required here, in part, because the jury would have necessarily found every element of criminal attempt in finding appellant guilty of evidence tampering. I disagree with that conclusion because, as discussed above, the offense of criminal attempt to tamper with physical evidence requires proof of the "specific intent to commit" evidence tampering, which is an additional element not found in the evidence tampering statute. To establish the offense of tampering with physical evidence, the evidence must show that the defendant,

1. "knowing that an investigation or official proceeding is pending or in progress,"

2. "alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding."

Tex. Penal Code § 37.09(a)(1). In describing the elements of tampering with evidence in this case, the trial court instructed the jury, as follows:

[I]f you find from the evidence beyond a reasonable doubt that ... the defendant ... did then and there, knowing that an offense had been committed, to wit: Possession of Drug Paraphernalia, *intentionally and knowingly conceal*

*physical evidence,* to wit: glass pipe with intent to impair the availability of glass pipe as evidence in a subsequent investigation, or official proceeding related to said offense, then you will find the defendant guilty of the offense of tampering with evidence[.]

(Emphasis added). In contrast to the elements of tampering with evidence, to establish a criminal attempt, the evidence must show that the defendant

1. acted "with specific intent to commit an offense," and

2. did an "act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."

Tex. Penal Code § 15.01(a). Applying those elements to the elements of tampering with evidence, the jury instruction for criminal attempt would have read as follows:

If you find from the evidence beyond a reasonable doubt that the defendant did then and there, knowing that an offense had been committed, to wit: Possession of Drug Paraphernalia, acted with the specific intent to commit the offense of tampering with evidence, including the specific intent to conceal the physical evidence, namely, a glass pipe, with the specific intent to impair the availability of the glass pipe as evidence in a subsequent investigation or official proceeding, and he did an act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended.

Both offenses of tampering with physical evidence and criminal attempt identically require the jury to find that appellant (1) knew that an offense had been committed, to wit: possession of drug paraphernalia, and (2) intended to impair the availability of the glass pipe as evidence. But criminal

attempt also requires the jury to find that the defendant acted with specific intent to commit "an offense," which, in this case, adds an extra element that he specifically intended to conceal the glass pipe. No determination was made by the jury as to that element. The majority opinion suggests that a jury finding that appellant intended to impair the availability of the glass pipe as evidence is essentially the same as a finding that he acted with the specific intent to conceal the physical evidence, namely, a glass pipe. But the specific intent to conceal is a different factual question. A person may intend to impair the availability of a pipe as evidence by destroying it, altering it, or concealing it, and a finding by the jury that appellant acted with the specific intent to impair the availability of the pipe as evidence does not mean that it decided that appellant had the specific intent to conceal the pipe, particularly in light of the court of appeals's determination that the evidence is legally insufficient to establish that he concealed it. The position adopted by the majority opinion requires an appellate court, acting as the thirteenth juror, to decide in the first instance whether appellant acted with the specific intent to conceal the physical evidence and whether he did an act that amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

Although it is true that criminal attempt can be a lesser-included offense of a charged offense, I note that this Court and Texas courts of appeals have, in some circumstances, declined to permit a jury instruction on criminal attempt. The Amarillo Court of Appeals explained the law as follows:

> There are instances in which courts have found the inconsistency between the "specific intent to commit an offense" requirement in the criminal attempt statute and the elements of a particular attempted offense precluded its use as a lesser-included offense under article 37.09(4). *See Gonzales v. State,* 532 S.W.2d 343, 345 (Tex.Crim.App.1976) (instruction on attempted voluntary manslaughter properly denied as lesser-included offense of attempted murder; involuntary manslaughter negates specific intent to kill); *Yandell v. State,* 46 S.W.3d 357, 361 (Tex.App.-Austin 2001, pet. ref'd) (deadly conduct not lesser-included offense of manslaughter under art. 37.09(4); "it is impossible to specifically intend to recklessly kill another"). In its analysis in one such situation, the court in *Strong v. State,* 87 S.W.3d 206 (Tex.App.-Dallas 2002, pet. ref'd), pointed out that because the offense of driving while intoxicated has no culpable mental state, the attempt statute cannot apply to DWI.

*Heller v. State,* 347 S.W.3d 902, 904 (Tex. App.-Amarillo 2011, no pet.). From this discussion, it is apparent that a great amount of precedent indicates that criminal attempt, though generally a lesser-included offense under the law, is unlike other types of lesser-included offenses because of the additional element requiring a specific intent to commit an offense. *See id.*

I recognize that in *Bowen* this Court decided that a jury instruction on a lesser offense was no longer a prerequisite for appellate reformation of a judgment, but this Court should not create a situation where reformation would be permitted if there were no jury instruction but not permitted if there had been a jury instruction. To this end, this Court should consistently apply the law on lesser-included offenses as described by *Hall v. State,* a case in which this Court determined that the first step in determining whether the jury may be instructed on a lesser-included offense is done by "comparing the ele-

ments of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense." *Hall v. State,* 225 S.W.3d 524, 535–36 (Tex.Crim.App.2007). This Court expressly held that the "pleadings approach is the sole test for determining in the first step whether a party may be entitled to a lesser-included-offense instruction." *Id.* at 535. In light of *Hall,* it is clear that an offense could theoretically be a lesser-included offense under a broadly worded statutory comparison of the elements of the lesser and greater offenses. But that does not mean that an offense is always a lesser-included offense of the charged offense because that determination can be made only by comparing the pleadings in the indictment or information, which may have modified the elements of the greater offense, to the elements of the lesser offense. *Id.* This Court held that, by "analyzing the statutory elements of the offense as they were modified in the indictment, the assault by threats was not included within the allegation of murder." *Id.* at 537. Here, the indictment and jury instructions permitted the jury to convict appellant based on evidence that he acted knowingly in concealing the physical evidence. Perhaps the pleadings alleging the greater offense could have been modified to require the jury to find that appellant intentionally concealed the physical evidence, thereby pleading the same mental state for the greater and lesser offenses, but these pleadings failed to do that by requiring only a mental state of knowing concealment for the greater offense. In reforming this judgment to criminal attempt, this Court is applying a different

standard for consideration of lesser offenses when an instruction on a lesser offense is not given than when it is given, which was precisely the problem this Court was attempting to correct when it decided *Bowen.*

In light of the pleadings and jury charge here, it is clear that the jury, in finding appellant guilty of evidence tampering, would have necessarily found that he intended to impair the availability of the crack pipe as evidence. But that is not necessarily the same thing as finding that appellant harbored the "specific intent to commit" the offense of evidence tampering, including the intent to conceal the crack pipe from police officers. This Court has held in the context of the criminal attempt statute that the "specific intent" to commit an offense requires a finding that the defendant specifically intended to bring about a particular result. *See, e.g., Chen v. State,* 42 S.W.3d 926, 929 (Tex.Crim.App.2001); *Yalch v. State,* 743 S.W.2d 231, 233 (Tex.Crim.App.1988); *Flanagan v. State,* 675 S.W.2d 734, 741 (Tex.Crim.App.1984) ("element 'with specific intent to commit an offense' has traditionally been interpreted to mean that the actor must have the intent to bring about the desired result"). Here, the jury made no such affirmative finding that appellant desired to bring about the concealment of the crack pipe. Because the jury did not implicitly find all the elements of criminal attempt in rendering its verdict of guilt on the tampering charge, I disagree with the majority opinion's conclusion that reformation is required here. *See* TEX. PENAL CODE §§ 15.01(a); 37.09; *Bowen,* 374 S.W.3d at 431–32.[7]

---

7. Other courts have, under similar circumstances, declined to modify a judgment to a criminal attempt when the attempt statute would require proof of a specific-intent element not found in the greater offense. *See, e.g., People v. Bailey,* 54 Cal.4th 740, 143 Cal.Rptr.3d 647, 279 P.3d 1120, 1122 (2012) (declining to reform judgment from prison escape to attempted prison escape because "attempt to escape contains a specific intent element not present in escape" and was, therefore, under California law, not a lesser-

This Court should hold that, although criminal attempt is a lesser-included offense of any charged offense, it is ordinarily inappropriate to reform the judgment to criminal attempt because the jury's verdict does not necessarily encompass a finding that the defendant acted with the specific intent to commit the greater offense. The adoption of such a bright-line rule would prevent courts of appeals from engaging in improper speculation in these cases while affording adequate deference to the jury's institutional role as fact-finder.

## III. Conclusion

Because I view the approach taken by the majority opinion as constituting an unwise expansion of this Court's holding in *Bowen,* I respectfully dissent. I would hold, generally, that reformation of the judgment should be limited to situations in which the underlying sufficiency error does not extend to the lesser-included offense, and in which an appellate court can clearly isolate the element affected by the sufficiency error and evaluate the remaining evidence to determine whether the jury necessarily found all the elements of the lesser offense beyond a reasonable doubt. Applying those principles to the facts of this case, I conclude that reformation of the judgment to criminal attempt is improper here. I would, therefore, affirm the judgment of the court of appeals.

---

included offense eligible for reformation of judgment); *In re Heidari,* 174 Wash.2d 288, 274 P.3d 366, 370–71 (2012) (declining to reform judgment from child molestation to attempted child molestation in part because crime of attempt "requires proof that the de-

fendant acted 'with intent' " not present in molestation statute).